IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, Individually and as Subrogee of Rittenhouse Claridge, LP : : : : v. : : INDIAN HARBOR INSURANCE COMPANY, : ET AL. : | CIVIL ACTION NO. 15-2344 |

**MEMORANDUM**

**SURRICK, J.**                                                                 **FEBRUARY  21 , 2017**

Presently before the Court are cross-motions for summary judgment involving an insurance coverage dispute.  Plaintiff Zurich American Insurance Company ("Zurich") provides general insurance coverage for Rittenhouse Claridge, LP ("Rittenhouse").  Plaintiff alleges that Defendant Indian Harbor Insurance Company ("Indian Harbor") has a duty to defend and a duty to indemnify Rittenhouse in an underlying personal injury lawsuit.

**I.    BACKGROUND**

The underlying lawsuit involves a tort liability claim brought by Milton Corado ("Corado") against Rittenhouse.  Corado was an employee of LWC City, Inc. ("LWC"), a company that had contracted with Rittenhouse to provide window washing services for the Rittenhouse apartment building (the "building").  While performing window-washing services for the building, Corado fell and sustained serious injuries.  (Corado Second Am. Compl. 2, Pl.'s Mot. SJ Ex. A, ECF No. 20.)  Corado filed the underlying complaint for the injuries he sustained while washing windows for Rittenhouse.  (*Id*.)  As a part of the contract between LWC and Rittenhouse, LWC was required to add Rittenhouse as an additional insured to its own insurance policy with Indian Harbor.  This dispute centers on whether, by adding Rittenhouse as an

additional insured, Indian Harbor has a duty to defend Rittenhouse in the underlying *Corado* litigation.

      **A.**      **Underlying Complaint**

On August 22, 2013, as an employee for LWC, Corado was washing windows at the Rittenhouse building. (Corado First Am. Compl. 3, Pl.'s Supp. Br. Ex. B, ECF No. 28.) LWC entered into a contract with Rittenhouse to perform window-washing services for the building. (*Id*. at 2.) Corado alleges that while at the work site, Rittenhouse directed him to set up his equipment against the metal flashing off of the building's eighteenth floor balcony. (*Id*. at 3.) Corado alleges that the metal flashing was sharp, and therefore severed his rope, causing him to fall and incur serious injuries. (*Id*.) The "rope grab" that Corado attempted to use was manufactured and designed by Mio Mechanical Corporation ("Mio"). (*Id*.) In addition to filing a negligence action against Rittenhouse, Corado also filed a negligence and product liability action against Mio. Corado argues that the rope grab was unsafe, and the unsafe design contributed to his injuries. (*Id*.) On February 17, 2016, Corado filed a First Amended Complaint naming Mio and Rittenhouse as defendants in the underlying lawsuit. (Corado First Am. Compl. 1.)

Corado brings a negligence claim of premises liability against Rittenhouse. (*Id*. at 6.) Corado alleges that his injuries were caused by the negligence of Rittenhouse and Rittenhouse's agents, servants, workers, or employees. (*Id*. at 7.) Corado contends that Rittenhouse and Rittenhouse's agents, workers, etc., were negligent in the following ways: by failing to maintain the premises and safeguard persons lawfully on the premises, by failing to inspect and supervise the dangerous condition (the metal edge of the flashing), by failing to maintain the proper barrier and equipment around the dangerous area, and by failing to warn Corado of the danger. (*Id*. at 6-

7.)  Corado also contends that Rittenhouse failed to properly supervise the work site and failed to provide proper safety management at the site.  (*Id*. at 6.)

### B.      Additional Insured Provision

LWC entered into a contract with Rittenhouse, wherein LWC was to perform window washing services for the building.  As part of the contract, LWC was required to add Rittenhouse as an additional insured to its own insurance policy with Indian Harbor for comprehensive bodily injury and property damage insurance.  (Purchase Order, Pl.'s Mot. SJ Ex. B; Def.'s Mot. SJ 2, ECF No. 24.)  The additional insured policy provides that Rittenhouse is an additional insured:

> [O]nly with respect to liability for 'bodily injury,' 'property damage,' or 'personal and advertising injury' caused, in whole or in part, by:
> 1.  [LWC's] acts or omissions; or
> 2.  The acts or omissions of those acting on [LWC's] behalf;
> In the performance of [LWC's] ongoing operations for [Rittenhouse].

(Additional Insured, Pl.'s Mot. SJ Ex E.)

Further, the Indian Harbor policy contains a "Primary and Non-Contributory Wording Endorsement" (the "Endorsement") which provides that:

> The following additional provisions apply to any person or entity added as an additional insured by endorsement to this policy:
> . . .
> 3.      Notwithstanding any other provision of this policy or any endorsement attached hereto, no coverage shall be afforded under this policy for any loss, cost or expense arising out of the sole negligence of any additional insured or any person or organization on behalf of any additional insured.

(The Endorsement, Def.'s Mot. SJ Ex. A. 39.)

LWC and Rittenhouse signed Purchase Order 56758, requiring that Rittenhouse be added as an additional insured to LWC's insurance policy with Indian Harbor.  (Purchase Order.) Purchase Order 56758 contained additional terms, which provided that LWC was required to "at all times and at its own cost, maintain comprehensive bodily injury and property damage

3

Insurance (naming Rittenhouse Claridge, L.P., as additional insured), including bodily injury and property damage arising out of or resulting from Work provided by this Agreement." (Additional Terms, Pl.'s Mot. SJ Ex. B.)  Further, the Additional Terms stated that LWC was to "take all necessary precautions and erect safeguards for the safety of its employees, Owner, Owner's employees and tenants, and any invitees of Owner and/or Tenants."[1]  (*Id.*)

### C.   Procedural History

On April 28, 2015, Plaintiff filed a Complaint in this Court.  (Compl., ECF No. 1.) Plaintiff filed the Complaint against Defendants Indian Harbor and LWC, as well as against Milton Corado, as a Nominal Defendant.  (*Id.*)  On June 29, 2015, LWC filed an Answer.  (ECF No. 9.)  On June 30, 2015, Indian Harbor filed an Answer.  (ECF No. 10.)  On August 4, 2015, Corado filed an Answer.  (ECF No. 20.)   On September 30, 2015, Plaintiff filed the instant Partial Motion for Summary Judgment against Indian Harbor.  (Pl.'s Mot. SJ, ECF No. 20.)  On October 30, 2015, LWC filed a Reply in Opposition to Plaintiff's Motion for Partial Summary Judgment against Indian Harbor.  On October 30, 2015, Indian Harbor filed the instant Cross-Motion for Summary Judgment.  (Def.'s Mot. SJ.)  On December 1, 2015, Plaintiff filed a Response in Opposition to Indian Harbor's Motion for Summary Judgment.  (Pl.'s Resp., ECF No. 25.)  On February 23, 2016, Plaintiff filed a Supplemental Brief in Support of its Motion for Partial Summary Judgment.  On March 8, 2016, Indian Harbor filed a Supplemental Brief in Support of its Cross-Motion for Summary Judgment.  (Def.'s Supp. Br., ECF No. 29.)  On

---

[1] Defendant LWC filed a Response in Opposition to Plaintiff's Motion for Summary Judgment against Defendant Indian Harbor. (LWC's Resp., ECF No. 22.)  Defendant LWC admits that the present Summary Judgment Motions do not involve LWC, nevertheless LWC submits the brief "to clarify the record to the extent it has any implication on other claims directly asserted against it, but not at issue in this motion." (*Id.* at 2.)  Defendant LWC admits that LWC did name Rittenhouse as an additional insured pursuant to Purchase Order 56758, however denies that LWC agreed to the "Additional Terms" provision Plaintiff refers to in its Motion. (*Id.*)  Specifically, it denies that LWC agreed to the broad indemnity provision referenced in the Additional Terms. (*Id.*)

March 15, 2016, Plaintiff filed a Brief in Response to Indian Harbor's Supplemental Brief. (Pl.'s Resp. Br., ECF No. 30.) On October 21, 2016, Plaintiff filed a Brief to Advise this Court of Recent Authority. (Pl.'s Auth., ECF No. 31.) On October 25, 2016, Indian Harbor filed a Response to Plaintiff's Notice of Recent Authority. (Def.'s Resp. Br., ECF No. 32.)

## II.    LEGAL STANDARD

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). Where the nonmoving party bears the burden of proof at trial, the moving party may identify an absence of a genuine issue of material fact by showing the court that there is no evidence in the record supporting the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 325 (1986); *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004). If the moving party carries this initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact is genuinely . . . disputed must support the assertion by . . . citing to particular parts of materials in the record."); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (noting that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

"Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted). When deciding a motion for summary judgment, courts must view facts and inferences

5

in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. Courts must not resolve factual disputes or make credibility determinations. *Siegel v. Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995). "[A] mere 'scintilla of evidence' in the nonmovant's favor does not create a genuine issue of fact and the non-movant may not rest on speculation and conjecture in opposing a motion for summary judgment." *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 666 (3d Cir. 2016) (internal quotation marks and citations omitted). This standard is no different when there are cross-motions for summary judgment. *Lawrence v. City of Philadelphia, Pa.*, 527 F.3d 299, 310 (3d Cir. 2008).

**III.   ARGUMENT**

Plaintiff argues that Indian Harbor has a duty to defend and a duty to indemnify Rittenhouse because it is an additional insured under the Indian Harbor insurance policy. Indian Harbor argues that it does not have a duty to defend or indemnify Plaintiff (1) because LWC's actions did not proximately cause the injuries in the underlying complaint, and (2) because the underlying claim against Rittenhouse arises out of Rittenhouse's "sole negligence," which, under the policy, releases Indian Harbor from its insurance obligations. Furthermore, Indian Harbor alleges that even if it does have a duty to defend Rittenhouse, it shares the burden of defending Rittenhouse equally with Plaintiff.

In order to determine whether Indian Harbor is required to defend Rittenhouse in the underlying dispute, we must (1) "determine the scope of coverage under the insurance policy itself" and (2) "ascertain whether the complaint against the insured states a claim that is potentially covered under the policy." *Allstate Ins. Co. v. Drumheller*, 185 F. App'x 152, 154 n.2 (3d Cir. 2006); *see also Ramara*, 814 F.3d at 673 ("[A] court ascertaining whether an insurer has a duty to defend its insured makes its determination by defining the scope of coverage under

the insurance policy on which the insured relies and comparing the scope of coverage to the allegations of the underlying complaint." (citations omitted)).

Since this is a diversity case, Pennsylvania law applies to the substantive issues. *See Travelers Indem. Co. of Illinois v. DiBartolo*, 131 F.3d 343, 348 (3d Cir. 1997) ("As a federal court sitting in diversity, we must apply the substantive law as decided by the state's highest court."). Under Pennsylvania law, "[i]f the complaint filed against the insured avers facts which would support a recovery that is covered by the policy, it is the duty of the insurer to defend until such time as the claim is confined to a recovery that the policy does not cover." *Erie Ins. Exch. v. Transamerica Ins. Co.*, 533 A.2d 1363, 1368 (Pa. 1987). We must also apply the "four corners" rule, and determine whether Indian Harbor has a duty to defend based solely upon the allegations set forth in the underlying complaint. *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006).

Courts are required to "liberally construe" the allegations in the underlying complaint in favor of the insured. *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999) (citing *Biborosch v. Transamerica Ins. Co.*, 603 A.2d 1050, 1052 (Pa. Super. Ct. 1992)). Courts are also permitted to construe any ambiguities within an insurance policy "in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls the coverage." *Kvaerner*, 908 A.2d at 897. An insurance company is required to defend its insured "until it becomes absolutely clear that there is no longer a possibility that the insurer owes its insured a defense." *Ramara*, 814 F.3d at 673-74 (citing *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 541 (Pa. 2010)). Therefore, if there is any possibility that the allegations in the underlying complaint could trigger coverage for Indian Harbor, then Indian Harbor has an affirmative duty to defend Rittenhouse.

7

*Id.* at 674; *see also Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 226 (3d Cir. 2005) ("If the complaint avers facts that might support recovery under the policy, coverage is triggered and the insurer has a duty to defend." (citation omitted)).

### A. Proximate Causation

Indian Harbor argues that it does not have a duty to defend Rittenhouse because the injuries in the underlying complaint were not "caused, in whole or in part[] by" LWC. Indian Harbor argues that because LWC's actions did not proximately cause the injuries in the underlying complaint, it cannot be held responsible for defending Rittenhouse in the underlying claim. Plaintiff argues that although LWC is not specifically mentioned in the underlying complaint, the Workers' Compensation Act requires that courts consider the fact that employees cannot sue their employers for personal injuries. In addition, Plaintiff argues that the underlying complaint states that the injuries were caused by the negligence of Rittenhouse and "its agents, servants, workers, or employees." Plaintiff argues that since LWC was an agent of Rittenhouse, Corado did include LWC in its allegations.

The Third Circuit has defined proximate causation as "a cause which was 'a substantial factor in bringing about the plaintiff's harm.'" *Ramara*, 814 F.3d at 675 (quoting *Bouriez v. Carnegie Mellon Univ.*, 585 F.3d 765, 771 (3d Cir. 2009)). In *Ramara*, the Third Circuit held that the allegations present in the underlying complaint satisfied the proximate cause test. *Id.* In support, the court noted that the injured employee "acted by and through its agents, servants and/or employees and failed to adequately inspect and monitor the work performed." *Id.* (citations omitted). The court further noted:

> [I]f [the injured employee] was injured during the course of his normal duties at the job site, and the injury was caused by the acts or omission of [the additional insured's] 'agents,' 'contractors,' or 'subcontractors'—of which [the employer]

8

was one—these allegations raise at least the potential that [the employer's] conduct was a proximate cause of his injuries.

*Id*.

Here, the underlying complaint alleges that Corado was injured while working as an employee for LWC.  (Corado First Am. Compl. 3.)  The complaint alleges that Corado's injuries were "caused solely and proximately by the negligence and carelessness of [Rittenhouse], its agents, servants, workers or employees . . . ."  (*Id*. at 7.)  Like the employee in *Ramara*, Corado was an employee who was injured while at a job site where his employer had contracted to do work.

Indian Harbor attempts to distinguish this case from *Ramara* by emphasizing that, in *Ramara*, the employer was a subcontractor for the underlying defendant and that the underlying defendant was responsible for supervising the subcontractor's work.  (Def.'s Br. Support SJ 9.)  Indian Harbor highlights that in *Ramara*, the defendant in the underlying claim served as both the property owner and general contractor.  (Def.'s Br. Mot. SJ 15.)  Further, Indian Harbor argues that while the underlying complaint in *Ramara* alleged negligence with respect to the "management and supervision of the *work* being performed," here, the underlying complaint alleges negligence with respect to the "management and supervision of the *work site*."  (Def.'s Br. SJ 14.)  This distinction is not convincing.  First, the court in *Ramara* emphasized that it does not matter whether the employer was a subcontractor for the underlying defendant or whether the employer was an independent contractor.  *Ramara*, 814 F.3d at 675 n.11 ("[A]n analysis of the allegations of the [underlying] complaint makes it clear that [the employer] potentially is implicated as one of [the underlying defendant's] contractors or subcontractors and the circumstances that it may have been an 'independent contractor' would not change the result.").  Therefore, the distinction is not whether Rittenhouse is solely the property owner or also a

9

general contractor, but rather whether LWC could potentially be implicated given the allegations in the underlying complaint.  Here, the underlying complaint specifically lists that Rittenhouse's "agents, servants, workers, or employees" were the cause of the underlying injuries.  LWC's contractual relationship with Rittenhouse could certainly be interpreted to fall within one of these categories.  This is particularly true because we are required to "liberally construe the factual allegations" in favor of the insured, Rittenhouse.  *Id*.

Further, the "work" versus "work site" distinction is not convincing.  The underlying complaint pleads the following allegations against Rittenhouse and its agents:  failing to maintain the premises to protect and safeguard persons on the premises, failing to inspect and maintain reasonable supervision over the condition of the dangerous condition, and failing to erect and maintain the necessary equipment, guards and barrier devises around the dangerous area.  (Corado First Am. Compl. 7.)  While Indian Harbor argues that the premises liability claims do not implicate LWC's liability, the Additional Terms for Purchase Order 56758 prove otherwise.  The Additional Terms state that LWC was to "take all necessary precautions and erect safeguards for the safety of its employees, Owner, Owner's employees and tenants, and any invitees of Owner and/or Tenants."  Indian Harbor argues that LWC's responsibilities under the Additional Terms are irrelevant to this insurance dispute.  (Def.'s Br. SJ 18.)  Indian Harbor argues that the terms of the Purchase Order are not alleged in the underlying complaint, and that the underlying complaint does not allege that LWC's negligence in providing safety measures caused the injuries.

The defendant in *Ramara* made a similar argument, which the Third Circuit explicitly rejected.  The defendant in *Ramara* argued that because the injured employee only named the employer once in the underlying complaint (simply to assert that he was employed by the

10

employer at the time in question), and because the underlying complaint was silent as to the employers' acts or omissions, the defendant did not have a duty to defend the plaintiff.  Citing Pennsylvania's four corners rule, the Third Circuit held that an insurer is not permitted to make a coverage decision "with blinders on, disclaiming any knowledge of coverage-triggering facts." *Ramara*, 814 F.3d 679.  The court held that when determining whether the allegations in an underlying complaint trigger a duty to provide coverage, insurance companies must affirmatively take into account the Workers' Compensation Act ("the Act").  *Id*.  Citing *Selective Ins. Co. v. Lower Providence Twp.*, No. 12-0800, 2013 WL 3213348, at *10 n.6 (E.D. Pa. June 26, 2013), the Third Circuit noted that because the Act grants immunity to employers, thereby preventing injured employees from suing their employers directly, an injured employee would not be inclined to include allegations against the employer in a complaint.  *Ramara*, 814 F.3d 678.  The Third Circuit noted that "proceeding as though the Act is irrelevant risks leaving an insured party without the coverage to which it is entitled."  *Id*. at 679.  Rather, "insurers (and the courts that review their determinations) must interpret the allegations of an underlying complaint recognizing that the plaintiff's attorney in the underlying action drafted the complaint taking the existence of the Act into account."  *Id*.  Consistent with the four corners rule, the Act serves as an interpretive constraint, making it difficult for an insurance company to deny coverage simply because the underlying complaint does not make allegations of employer liability.  *Id*. at 680.

Therefore, although the underlying complaint does not mention LWC or allege LWC liability, we must take the Act into consideration in making a coverage determination, construing coverage in favor of the insured.  *Id*.  Here, the underlying complaint alleges that Rittenhouse was negligent in failing to erect safeguards and provide supervision over the work site.  Although the underlying complaint does not explicitly mention LWC's negligence in providing safety

precautions, because LWC was responsible for providing a safe work environment for its employees, we find that proximate causation exists.[2]

Since there is a potential that LWC's actions proximately caused the injuries in the underlying dispute, Indian Harbor has an affirmative duty to defend Rittenhouse. *Id*. at 678 ("It is therefore the potential, rather than the certainty, of a claim falling within the insurance policy that triggers the insurer's duty to defend." (citations omitted)). We cannot find that the allegations in the underlying complaint fall patently outside of Indian Harbor's policy coverage for Rittenhouse. *Id*. at 680. Accordingly, Indian Harbor has a duty to defend Rittenhouse as an additional insured.

### B.     Sole Negligence

Indian Harbor argues that even if Rittenhouse is covered as an additional insured, the sole negligence provision releases Indian Harbor from its duty to provide coverage to Rittenhouse. The sole negligence provision applies to "any person or entity added as an additional insured" and provides that "no coverage shall be afforded under this policy for any loss, cost or expense arising out of the sole negligence of any additional insured . . . ." (Def.'s Supp. Br. 5-6.) Plaintiff argues that because the negligence allegations in the underlying complaint are not exclusively directed towards Rittenhouse—they also allege negligence against the rope manufacturer, Mio— the sole negligence clause does not apply. Indian Harbor argues that Plaintiff's interpretation is "unreasonably broad" and that the sole negligence provision must be read in conjunction with the terms of the additional insured clause. (*Id*. at 6.) Indian Harbor contends that although the underlying complaint alleges liability against the rope manufacturer

---

[2] Plaintiff argues that the Court should apply but-for causation and Indian Harbor argues that the Court should apply proximate causation. Like *Ramara*, because we find that proximate causation exists here, we need not address the question of but-for causation. *Ramara*, 814 F.3d at 675.

12

(Mio) in addition to Rittenhouse, the "sole negligence" language is meant to be interpreted as between the named insured and the additional insured.  Indian Harbor argues that the intent of the provision "is to limit additional insured coverage to circumstances where the named insured's negligence, rather than the additional insured's sole negligence, was a cause of the plaintiff's injuries." (*Id*. at 8.)  Indian Harbor argues that because the underlying complaint does not point to LWC as the cause of the underlying injuries, Rittenhouse is solely negligent.

Even if we were to adopt Indian Harbor's more narrow reading of the sole negligence provision, we would nevertheless find that the sole negligence provision does not apply here.  For the same reasons explained above, there is a possibility that LWC was the proximate cause of the injuries in the underlying complaint.  Therefore, we cannot find that the underlying injuries arise out of the sole negligence of Rittenhouse.  For the exact reasons that Indian Harbor argues in favor of applying the sole negligence claim under a more narrow interpretation, we must similarly reject its applicability.  Because we must interpret a policy in favor of the insured, and because there is a potential that the injuries arose out of LWC's acts or omissions, we cannot definitively find that Rittenhouse is solely negligent.[3]

### C.   Equal Representation

Indian Harbor argues that even if it were required to defend and indemnify Rittenhouse in the underlying *Corado* litigation, Indian Harbor and Plaintiff Zurich are required to share the coverage obligations.  Indian Harbor argues that because the Indian Harbor policy and the Zurich policy both seek to provide excess coverage to Rittenhouse, they are "mutually repugnant." (Def.'s Mot. SJ 31.)  Therefore, Indian Harbor argues that both Zurich and Indian Harbor must equally share the burden of defending Rittenhouse in the underlying *Corado* litigation.  Plaintiff

---

[3] Since we find that the sole negligence provision is inapplicable even under Indian Harbor's more narrow interpretation, we need not examine Plaintiff's broader interpretation—namely that any claim against multiple defendants would render the provision inapplicable.

argues that, according to the policy, Indian Harbor is required to provide primary coverage to Rittenhouse.

Two competing policies are deemed to be mutually repugnant of one another if they are "irreconcilable and mutually exclusive." *Nationwide Ins. Co. v. Horace Mann Ins. Co.*, 759 A.2d 9, 11 (Pa. Super. Ct. 2000); *see also Mega Const. Corp. v. Quincy Mut. Fire Ins. Co.*, 42 F. Supp. 3d 645, 662 (E.D. Pa. 2012) ("[W]here fidelity to the language of both policies is impossible—that is, where one cannot be enforced without running afoul of the other—they are deemed mutually repugnant . . . .") (citation and internal quotation marks omitted); *Progressive N. Ins. Co. v. Universal Underwriters Ins. Co.*, 898 A.2d 1116, 1120 (Pa. Super. Ct. 2006) (holding that two insurance policies were irreconcilable because each dictated that their coverage was excess). "Courts must reconcile competing ['other insurance['] clauses when it is possible to do so." *R.R. Donnelley & Sons, Co. v. Fireman's Fund Ins. Co.*, No. 03-6412, 2004 WL 2810065, at *5 (E.D. Pa. Dec. 6, 2004) (alteration added). The Supreme Court of Pennsylvania has held that two policies are mutually repugnant if "by following the express dictates of one policy, [the court] would be in direct conflict with the dictates of the other." *Am. Cas. Co. of Reading, Pa. v. PHICO Ins. Co.*, 702 A.2d 1050, 1054 (Pa. 1997).

In order to determine if the respective policies each contain "express dictates" that the coverage is excess, we must examine the "Other Insurance" provisions of each policy.[4] The provisions are as follows:

Zurich's "Other Insurance" Provision

    **4.    Other Insurance**

---

[4] "Other insurance exists where there are two or more insurance policies covering the same subject matter, the same interest, and against the same risk." *Harstead v. Diamond State Ins. Co.*, 723 A.2d 179, 182 (Pa. 1999) (citation omitted).

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**
This insurance is primary except when **b**. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c**. below.

b. **Excess Insurance**
(1) This insurance is excess over:
(a)  Any of the other insurance, whether primary, excess, contingent or on any other basis:
(i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";
(ii) That is Fire Insurance for premises rented to you or temporarily occupied by you with permission of the owner;
(iii)  That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or
(iv)  If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g**. of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.
(2)  Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

Indian Harbor's "Other Insurance" Provision

4. **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**
This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. **Excess Insurance**
The insurance is excess over:

15

(1) Any of the other insurance, whether primary, excess, contingent or any other basis:
    (a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work"
    (b) That is Fire Insurance for premises rented to you or temporarily occupied by you with permission of the owner,
    (c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner, or
    (d) If the loss arises out of the maintenance or use of aircraft, "autos" or water craft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.
(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

In addition to Indian Harbor's "Other Insurance" provision, the policy contains an endorsement provision that modifies the "Other Insurance" provision to the extent that there are any inconsistencies. The endorsement provision states the following:

The following additional provisions apply to any person or entity added as an additional insured by endorsement to this policy:

1. Solely to the extent required by a written contract which the Named Insured enters into prior to an "occurrence" or offense for which the additional insured is provided coverage under this policy:

    a. This policy shall apply as primary insurance in relation to any other policy issued to that additional insured.
    b. Any insurance or self insurance maintained by the additional insured shall be excess of the insurance afforded to the additional insured by this policy and shall not contribute to it.

The Conditions section of this policy, Other Insurance, is modified to the extent it is inconsistent with this endorsement.

Absent minor formatting differences, the Other Insurance provisions are identical. Based upon the respective "Excess Insurance" provisions, Zurich's insurance is excess over Indian Harbor's insurance. Pursuant to subsection 2 of Zurich's Excess Insurance provision, if

16

Rittenhouse is added as an additional insured to another insurance policy, Zurich will only be required to provide excess insurance to Rittenhouse.  Rittenhouse was added as an additional insured to the Indian Harbor policy under the Purchase Order agreement with LWC.  In order for subsection 2 to apply, the other insurance policy must provide primary insurance that covers liability for damages arising out of the premises or operations.  Here, within the Additional Terms of the Purchase Order, LWC agreed to include "bodily injury and property damage insurance" to Rittenhouse.  The Additional Terms also state that "[i]t is expressly understood" that LWC "*assumes all liability for injury* . . . resulting from the performance of the work . . . and agrees to defend, indemnify, and hold harmless Rittenhouse Claridge . . . ."  (Additional Terms (emphasis added).)

     Indian Harbor argues that although Rittenhouse was added as an additional insured, Indian Harbor is not required to provide primary insurance to Rittenhouse.  Indian Harbor cites to the Endorsement for support, which states that the policy should serve as primary insurance "[s]olely to the extent required by a written contract."  Indian Harbor argues that because the Purchase Order between LWC and Rittenhouse did not require that Indian Harbor cover Rittenhouse as its primary insurance, subsection 2 does not apply and therefore Zurich and Indian Harbor must equally share the coverage obligations.  Plaintiff rejects this, arguing that there is "no provision within [the Endorsement] stating that Indian Harbor's coverage is excess to an additional insured's own coverage **unless** there is a primacy clause in the underlying contract."  (Pl.'s Resp. 20.)

     We are required to reconcile the two policies, if it is possible to do so.  *R.R. Donnelley*, 2004 WL 2810065, at *5.  Indian Harbor argues that the provisions are mutually repugnant because both policies seek to provide excess coverage for Rittenhouse.  However, we are

17

satisfied that the Indian Harbor policy does not expressly dictate that its insurance coverage is excess here. Plaintiff cites to Indian Harbor's Other Insurance provision, and argues that none of the "excess insurance" provisions apply to the present case. Indian Harbor's Primary Insurance provision specifically states that it will serve as primary insurance *except* when the Excess Insurance provisions apply. None of those provisions apply here. Although the Endorsement does modify the "Other Insurance" provision, the Endorsement does not explicitly dictate that an additional insured must receive excess coverage unless noted otherwise. The Endorsement states that "[s]olely to the extent required by a written contract, which [LWC] enters into . . . [t]his policy shall apply as primary insurance," however it does not expressly state any requirements for excess coverage. On the other hand, Indian Harbor's "Other Insurance" provision explicitly mentions the circumstances under which the policy qualifies as "excess insurance."

Therefore, we find that the Indian Harbor policy does not expressly dictate that Rittenhouse must receive excess coverage in this case. Since the express dictates within the Zurich policy do not conflict with the express dictates within the Indian Harbor policy, we cannot find that the policies are mutually repugnant. *Am. Cas. Co. of Reading, Pa*, 702 A.2d at 1054. Therefore, subsection 2 of the "Excess Insurance" provision applies, and Zurich is only required to provide excess insurance to Rittenhouse in the underlying *Corado* litigation. Accordingly, we find that Indian Harbor is required to provide primary coverage to Rittenhouse.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment is granted and Defendant Indian Harbor's Cross-Motion for Summary Judgment is denied.

An appropriate Order follows.

**BY THE COURT:**

_____
**R. BARCLAY SURRICK, J.**